Gamon Plus. We're ready whenever you are. Thank you, Your Honor. May it please the Court, the designs that are claimed in the two patents in suit here are claimed broadly, to put it mildly. Each patent claims a design associated with a gravity feed dispenser, a rack for holding and dispensing cans. And what the patents claim is some kind of solid surface area, sometimes called a label area, that's positioned somewhere over a can that's been dispensed from the rack and is lying on its side. And one of the patents, the 646, adds a stop at either end of the dispensed can. The Board's determination that those broadly claimed designs are patentable raises two The first, what constitutes a primary reference, the starting point for the obviousness inquiry in a design patent? And the second, how do you construe design patent claims when part of the claim design is shown in broken lines? The case presents a third issue regarding the nexus that a patentee must show between asserted secondary considerations of non-obviousness and the supposedly novel features of a claimed invention. I can take each of those issues in turn or as the Court prefers. Well, let me ask you, and I'll ask your friend this too, because there's, at least for me, some confusion. And this is about what we call dotted lines or the lines versus a straight line. Because the language at the MPP in our cases seem to suggest it can't be used, it's unclaimed subject matter if you have those dashed lines. On the other hand, it allows it to be used as some sort of boundary. And I guess I'm having a hard time differentiating between what the actual differentiation is in this case. Sure. So what the broken lines can be used for is environmental context. That is, the broken lines teach the person reading the patent, teach the public, that the claimed is the gravity feed dispenser. But there's nothing about the gravity feed dispenser that's claimed. So if you look, for example, just at pages 10 or 11 of our opening brief. So page 10 has the figure of the 646 patent. Page 11 has the actual claimed subject matter of the 646 patent. If you look at the claimed subject matter, what you see shown in solid lines are the dimensions of a can, which we know is the dimensions of a Campbell soup can, not something unique that the patentee invented, with stops in front of it. And then there's some solid surface above it. We know it's solid because of the shading lines. But we don't know anything about the height, width, or overall shape of that surface. So where's the board's claimed construction in its opinion? Can you identify that readily? I can, Your Honor. I'm sorry, Your Honor. I had it at my fingertips, and now I'm so excited. I'm sorry to take your time for that. OK. 67, Your Honor. So the board construed.  is the subject matter of the 646 patent. And compare that with page 11, which shows just the claimed subject matter, or page 10, which shows the entire drawing. The board used the broken lines to determine that, for example, the solid surface is taller than it is wide. It used the broken lines to determine that the solid surface is positioned a particular distance above the can lying on its side. It used the broken lines to determine that the solid surface is at roughly as wide as the can lying on its side. But the broken lines don't change the design. So the design, and we're now focusing on what's taught by that solid surface area, Your Honor. All we know is that there's a solid surface that includes what's shown there in shading. The entirety of that solid surface area could be wider than it is tall. It could be a circle. It could be a triangle. It could be an octagon. There are no boundaries defined around the solid surface, and we don't know how far it extends down towards the can because there's no bottom boundary. You don't need to. The design patent is the design. The design patent is what's claimed as the design, but you have to take out from what's claimed the broken lines. It's the design, what's claimed, but for the broken lines, which are not included in the design, there it is. What is there to construe? So the broken lines, and, again, now focusing specifically on the solid surface, what is sometimes called the label area, all of the top, bottom, left, and right side are all shown in broken lines, which means that there's no claimed boundary. Contrast that with the can. So you can see a definition of the height and diameter of the can, whereas for that solid surface, it can, according to the design as shown, it can extend in either direction. It can extend up. It can extend down. It can be a circle. Can I see if I understand your argument? Yes, ma'am. This is really a real question. It seems to me you're making two arguments with regard to what the board did. One is that they required, and forgetting primary reference or whatever, that there be a can shown, and you argued, no, no, no, you didn't need a can. Assuming we reject that and we think you do need a can, is there a second argument you're making, at least with respect to the claim construction, because we don't know what the board did, because they also relied on the dimensions and how this labeling all fits together, and there was error in how the board construed the impact of the dashed lines. So I know you're arguing the can shouldn't do it for you, but assuming we reject that, do you still have an argument left with respect to the board's claim construction? Yes, so there's two different issues there, Your Honor. The question of whether a can has to be shown goes towards the issue of what constitutes a primary reference. Where the board got its claim construction wrong is it used the broken lines to infer some proportionality between the solid surface that's disposed over the can. So, for example, it used the broken lines to presume that the solid surface sits above the can at roughly the height of the can, but that's not claimed. So I'm not sure if that answers Your Honor's question. So the error in claim construction... Where would that take you? If we disagree with you on the can stuff, and we think the can needed to have been there, then aren't you left only with SAM, whatever that other reference is? SAM Ways, Your Honor. SAM Ways is the primary reference? Is that where it gets you? I'm not seeing how this dimension thing and proportionality, which I think I understand at least your argument on, where it gets you in this case. So the proportionality, it probably helps to start with the primary reference because the proportionality issue, for example, has a little bit less to do with the Lynn's reference than with the SAM Ways reference. One of the things the board said was, okay, well, SAM Ways shows embodiments that have a can, but in SAM Ways, the label area, the surface area, has a different proportionality than what's claimed. So that's where the proportionality error in claim construction comes into play. Okay. So the issue with the broken lines, and then perhaps I can shift to the primary reference, is we have clear black-letter law. Broken lines are not to be considered when you're construing the boundaries, the scope of the claim. It's in the MPEP, and both of these patents have an express disclaimer confirming that. So the public is on notice that what the public has been told is that the broken lines are there to show environmental context, to show that this is a design that's used in gravity feed dispensers, but you're not supposed to read the broken lines to define claim scope. But the word... I'm sorry. Go ahead. The word boundary is used frequently when the board and when our cases have talked. So what's the difference? If it constitutes a boundary, then I don't know what the distinction is between being a boundary and being a claimed feature. So as I understand it, Your Honor, again, looking, for example, at what we've shown on page 11, the claim design would have to include at least what's shown there as a surface area. But it's not limited to that. So as long as that part of the surface area is in there, it can extend to either side. Yeah, I don't know if that's right. When I look at MPEP 1503.02, number 3, applicant may choose to define the bounds of a claim design with broken lines when the boundary does not exist in reality in the article embodying the design. It would be understood that the claim design extends to the boundary but does not include the boundary. So I haven't seen you argue... I haven't actually seen you raise any argument or case to the contrary of that. So if you look at page 29 of our opening brief, Your Honor, where I think we're citing that same section, that it's unclaimed subject matter may be shown in broken lines for the purpose of illustrating the environment in which the article embodying the design is used. Unclaimed subject matter must be described as forming no part of the claim design or a specified embodiment thereof. And again, the use of broken lines indicates that the environmental structure depicted in broken lines forms no part of the design and is not to indicate the relevant importance of parts of the design. You said page 29? Page 29, Your Honor, yes. 29 of your brief. Thank you. I guess I'm still struggling with how on appendix page 66 what the board colored in blue, or what is colored in blue at least in the portion that we have in front of us, isn't the claim design. You're saying that's not the claim design. The board got it wrong to the extent that they found that that was the claim design. Not quite, Your Honor. The blue does show what's claimed. I think what we show on page 11 of our brief more clearly separates out, more clearly takes the broken lines out of what's being shown so you can focus on just what's actually claimed. What's shown on page 11 reflects the blue that's shown on appendix 66. It just takes the broken lines out so you can focus specifically on what's claimed. Are you telling us that the presence of the broken lines in the drawing invalidate the claim? No, Your Honor. What we're saying is, no, the broken lines are there to show environmental context. Again, the broken lines show that this solid surface over a can, that that's a design that's used in the field of gravity feed dispensers. The board says it's proper to ignore the broken lines. I'm sorry, to ignore the broken lines. The broken lines provide environmental context. They show you where the design's been occurred. In the abstract, when you look at the picture, it shows where the broken lines are. Plus, the board accepts the description that they form no part of the claim design. Where is that wrong? When you look at the board's actual construction on page 67, Your Honor... That was the board's construction. Right. The board's construction reads from the broken lines proportionality that's not actually reflected in the actual claimed design. So, for example, again, the board determined that the label area is taller than... But that's not an issue in validity, proportionality. Is it? Are you saying that there are references which, if proportionality were changed, would be more relevant, would be invalidating? So, Your Honor, the board considered that proportionality as a distinguishing feature in Samways, for example. The board decided that the proportionality of a Samways dispenser was different than how the board had construed the proportionality of the claim designs. So, if you take proportionality out, and we argue that proportionality should not have been part of that claim construction, that the claim designs do not claim a particular relative width of label area to can, a particular relative height of label area to can, a particular shape of label area, if you take all of that out, then the board's distinguishing of Samways has to be reviewed. But only if we take all that... Only if we disregard the board's conclusion that a spatial relationship is part of the claim design. For Samways, correct, Your Honor. So, for Lins, the issue of Lins being a primary reference is whether a designer of ordinary skill who designs gravity-feed dispensers would understand Lins to teach. What support do you have for this idea that if you take away the broken lines and have to exclude them, that that portion could go on forever in any particular direction? I just don't find any support in the MPEP or in any cases for that idea. Because that's how the MPEP says to treat broken lines. So, for example, here, Your Honor, if the patentee had wanted to claim any kind of proportionality or dimensionality of the label area or claim a rectangle, for example, as a label area, they should have shown it in solid lines. No, but the MPEP section 3, 1503.02, number 3, but you omitted from page 29, says the two most common use of broken lines are to disclose the environment related to the claim design and to define the bounds of the claim. Structure that is not part of the claim design but is considered necessary to show the environment in which the design is associated may also be represented in drawings by broken lines. This includes any portion of an article in which the design is embodied or applied to that's not considered part of the claim design. So I guess when I read that, I understand the broken lines can also define the bounds of the claim, that shaded part in between. It can define the boundaries of what that shaded part is. How am I misunderstanding that MPEP section? Because that's how the PTO understood its own MPEP section, too. So how am I misunderstanding that MPEP section? So the broken lines tell you that this isn't a gravity feed dispenser. We couldn't take that design and apply it to... Yes, I know, but I think the broken lines in this context, where you have a shaded region that's clearly part of the design, provide the boundaries of the claimed area. And if I think that, then I think they've got the spatial relations right. And I think that that's a fair reading of that MPEP section that I just read. And given that it's their own MPEP, and they think so, too, I don't think you have me on this. And I understand, Your Honor. So again, but that's our take of what the MPEP says. It's a public notice requirement. The public, looking at a claim design, is going to look at it and understand the broken lines form no part of claim scope. So they're going to look at what's actually claimed in something other than broken lines, which is shown here in solid lines and in shaded. But there's no dispute the shaded part is part of what's claimed. You don't dispute that. The shaded... I'm sorry, the shaded lines? The shaded part. The shaded... the label part. The part where the label goes. You don't dispute that that is part of the claim design. Correct, because there are shading lines there to show some solid surface. We agree that there is a solid surface claim there, and you can tell it's a solid surface. But your view of design patent is because the broken lines are there, you have no idea what the dimension, shape, or extent of that shaded part is. I mean, that would be a pretty kind of... that would create a pretty amorphous rule for design patents. Actually, Your Honor, we think it creates a pretty bright line rule that we have. It just imposes on the patentee the burden of if they want that label area to have some defined scope, show it in solid lines. We're way beyond our time. We'll restore some rebuttal next time. Thank you. Thank you, Your Honor. May it please the Court. My name is Drew Toshler. I represent Gammon Plus, the patent owner and appellee in this case. Following what this discussion was going about, the scope of the design patent claim, it's pretty clear that appellants are confusing the law of design patents and utility patents. Design patent claims are not comprising claims. The definition of a design patent claim scope is that an ordinary observer will look at that design... But can I ask you, I guess, going back to just the discussion we've been having for the last 10 minutes, in this instance, what would have been the difference? Dash lines have to have some difference than a straight line with no dashes. What would we be doing differently if your client had claimed straight, unbroken lines versus the broken lines? What is the significance of that for your invention? My sense is that it's not a major difference in the design context,  But there might be some quality to the boundary. Let's say the boundary was a convex or concave boundary or line, that might be something. And the other area where I think the dotted lines are used, if you look at the bottom of the can in that... No, no, no, but I'm talking about this thing. We've had most of our discussion not about the can but about this display. Well, it's an analogous situation because the lower bottom of the can, the can itself is a cylindrical object, but it only exposes the part of the design which is that sort of silhouette. And there's a dotted line around the stops and around the bottom of the can there. So I guess if you want to have a line, it would suggest you were cutting it. That dotted line along the bottom is not part of your claim design. No, it's not, no, no. It just means that shape, though, the shape of the can with that sort of cut-out silhouette or appearance is the design. I'm kind of confused. We say the shape of the can is the design.  You don't claim the can. But are you claiming the can that's within the dispenser? Yes, the can is part of the design. So does that mean if it's empty and if I sell it when it's empty, it's not infringing? That's right. It doesn't infringe until you... Well, it should be a contributory infringement probably because the rack is usually configured to... So the only infringement that goes here if we were to move this design patent into an infringement case would be Campbell sells it to this other person but all the time empty. Or uses it in a store to sell soup. No, so the only infringement happens when it gets to Kroger's or Giant or Safeway and they take what's been sold by Campbell and the other person you've named in this case. There might be some other principles of infringement like almost all of the parts are supplied or something like that. Well, the basis for your getting this patent is the fact that there's a can there. That's what differentiates it from... That's correct. It's a way of selling a Campbell soup can, that shape of the can. So the infringement happens when the can is actually in the display thing. That's correct, when it's used in the display. Can you go back to my question though I'm not sure I understood your answer which is if this patent had not used the dotted lines on the display and had just used straight lines, what would be the difference in impact for that patent as opposed to your patent which has dotted lines? I would say there would not be a big significant difference because as a mathematician, I'm kind of used to thinking of these things. You can have a square which is all the points inside of a square and it will include the perimeter which is really just a line of zero dimensions. So I don't think that the perimeter line is so important. The real important thing is the subtended area and I think it's incorrect. The one thing council said was if you were to extend this sign... I'm sorry, I don't know what that term means, subtended area. I'm sorry. Enclosed. The enclosed area inside of this boundary. The boundary itself is not claimed but the area inside of it is claimed. Well, if that's true, so you're saying the difference would be if you have non-dashed lines, you wouldn't be claiming the lines as well as the interior. So the difference with the dashed lines means you're claiming the interior but not the dash. I'm sorry. It would be pretty similar ultimately. Well, I'm not looking for similarities. I see the similarities but I'm looking for the differences. I can't think of a situation where there would be an issue except, as I'm saying, if there were a quality to the boundary which was a little bit more than just a line like the outer edge going back instead of the inward edge coming out or there could be some slight differential. Will you please look at A66 which is the board's opinion and I assume you agree that the blue part is the claimed part. A66. A66. Sorry, somebody copied. Yes. The blue part is the part the board says is the claimed design, correct? That's correct. Okay. Now I'd like you to look at Lintz which is on page A697 and I'd like you to keep them right next to each other. A697 in the appendix. This is one of the potentially primary references. The one thing that baffles me about your briefs by the way is why you all don't put pictures of these things side by side because that's what's at issue here and I mean I understand why you might not want to because then they might cause me to say gosh those things look similar but I don't like this. But A697 figure one. Am I right in understanding that that is the prior art that the board was looking at to ascertain whether it can be the right reference? That's correct. That's the prior art reference. So when I look at these two things side by side I'm sort of baffled as to how they aren't exactly the same thing. I don't know if you don't have them here. I'll share mine with you. So this is the claim and this is the prior art. Yes. And so Polly do you have it? This is the claim. So it's just for me I'm sort of baffled. What exactly, given that all the dotted line stuff on page A66 isn't included, which includes the roller coaster looking way in which it extends back beyond the stops. None of that's included as part of the design. That's correct. No, it's only the can and the stops. What the heck is the difference between A697 and A66? These aren't just substantially the same. They look exactly the same to me. One thing is that the sign is narrower than the length of the can. The sign on our device is as wide as the rack. I'm sorry. The sign is narrower than the length of the can? In our... How do you know? There's no can in this one. Pardon me? How do you know the sign is narrow? How do you know about lint and whether it's wider or narrower than the can? Well, that was the problem. There was no can defined for lint. In fact, it doesn't even say that there's a can. It's a display for cans. The... Well, actually, the expert for Campbell's was the examiner who issued this patent, or one of the examiners who issued this patent, Lintz. So we feel he had some contamination of his thinking. If you try to figure out how to do this, he actually conceded that... Wait, whose thinking was contaminated? I don't understand. The expert, the primary examiner on lint is James Gandy, and he was also the expert who interpreted it as a by-right reference for... Okay. The problem is that the device here is really just basically a fanciful device. They never figured out how to work it, and the size of the can or what it would look like in this device is not clear. We asked the expert... What do you mean, what it would look like? It would be right there at the bottom. There would be a Red Bull can, but it would be in a different position. It wouldn't be as far forward. The actual distinctions here are... There are quite a few, but one is that the sign is dimensions which are kind of analogous to the shape and height and width of the Camel Soup can, which is lying sideways there. If you can see, this is a smaller sign. It's not quite as tall. There's an aesthetic difference here. The can below it is farther forward than the can in Lintz would be. So you think that it can't be the primary reference at all, can't even be the primary reference, can't be the reference used in the obviousness analysis because the sign, despite the fact that I'm struggling to see any difference at all between these things, you're telling me that the height of this one is not quite as high as the other one. I think you're being guided by looking at our patent first. If you look at this for the first time... I'm going back and forth between the two. I don't think you can immediately assume that the can is going to be a Camel Soup can, or where it would wind up, by the way. You're not claiming a Camel Soup can. You're just claiming any kind of a can. It could be a soda can, too, right? No, actually, we're talking about the actual dimensions of this can and the associated height and location of the sign above it. No, I'm sorry, but that actually is not correct. That is completely not correct. I buy yams for Thanksgiving. I buy them in a really big can, big can of yams. This exact design could be... There's no scale given in a design patent. This design could be for those giant yam cans. It's just that everything would have to proportionally be equally sized. No question, but there has to be a proportional... So this is not for Camel Soup cans. It's a tuna fish can. If it was a tuna fish can, it wouldn't come under this patent, right? Any cylindrical can would come under this patent. If it was very narrow and you're standing a tuna fish can on its side, why wouldn't it come under this patent? Because it doesn't look like this combination of things. The thing is, we're in the design patent world. It has nothing to do with you. But we don't have any dimensions for this, right? The only dimensions the board refers to is the relationship between this display thing, and you know I've got issues with the contours of this display thing since it's unclaimed, and the can, right? Or whatever it is, the object that's in there, right? Right. Well, the thing is that the appearance of this can is, in our picture, is different from a tuna fish can or a Red Bull can or a Pringles potato chips can. In a utility context, you can squish sizes around all you want. I understand. So you're saying the Pringles can would be longer and skinnier, but my yam can looks exactly like this. Oh, sure. If it's the same shape, it doesn't have to be a Campbell's Soup can, but I meant the dimensions of a Campbell's Soup can, you know, the same, in other words, like 4 1⁄2 inches by 2 1⁄2 inches. Well, I don't know. The board, in its opinion, had a bunch of cans, and, you know, soup comes in different jumbo sizes here. And I thought some of the diagrams, the pictures, the photos, the board had in its opinion were different-sized cans. There are two Campbell's Soup cans that my client made for racks flooring. They're basically, one is scaled up, and they have one that's condensed, and the other one is ready to serve. The thing that's confusing me is that the design patent claims it is for a display assembly, a display. Like, the patent itself says, it doesn't say it's claiming cans. You're not claiming a can. It's a display of a can. Gravity-feed dispenser. That's what you're claiming, a gravity-feed dispenser. A dispenser doesn't necessarily include the objects which are being dispensed from it. So I'm just completely confused about how the can is part of your design. I mean, you're claiming a gravity-feed dispenser, a dispenser. That's like when, okay, so suppose somebody covers, you know, we get a lot of these design patents on bottles, like, say, Fantastic, 409, one of these spray bottles,  They're not claiming the fluid inside the design. They're claiming the bottle. So I don't understand. You're claiming the dispenser. I don't know how, I don't know why the fact that Linz doesn't show the can in its picture means it can't be a primary reference. It's clearly a dispenser for cans, just like yours. There's no other, no person of skill in any art could look at this thing and think it's for anything other than being a dispenser of cans. I don't understand. You could, I think. All right, what else did they put in there? The question is, what size can are you going to put in there? What's it going to look like? If it's a tuna fish can, it wouldn't look like artisan. But look at 827 of the board opinion. They're not looking at the regular size, what I would think. They've got what I would think of the Campbell's Soup can on the left. And then you've got these very large cans that are the jumbo size on the other side. So, right? Isn't it contemplated to at least… I think they're roughly scaled up, just the larger can, like five by three. I don't know. It's got the label chunky. I think some of those come in bigger. So you think the cans have to be the size, a certain size. Proportionally the same. No, no, do they have to be a certain size? Forget the… No, no, not a certain size. Oh, so you're saying the can could be any size. But the same proportions. Proportions to what? Height to… Same proportions of height to radius of the cylinder of the can. Why? That's the can. It's not the display. You are claiming a display. We're claiming a display with a can in it. That's how we want to present this invention. I guess I'm not clear on what the proportion. You're talking about the display, the stuff that the board talked about, how the display can only have a proportionate, has to be proportionately close to the can. Let's say you have a 50-gallon drum that looks like a Camel Soup can. You could make a big rack with a big sign, which would be much larger than that, and it would come under this design because the proportions of the can and the stops and the sign, which would be immense. It would cover any size of a can as long as the display stuff on top of it was the width was equivalent to the can? All the relative proportions. You're talking too fast. Is that a yes to my question? Yes, yes. This is a question of infringement. The board wasn't deciding infringement. They were deciding patentability, validity of the design. I see that their opinion, obviously, various points of scope were argued, but I must say I do have difficulty understanding how that relates to patentability of the design. There may be issues of scope that would arise in an infringement action, but did the board undertake to speculate? Well, yes, Your Honor. The board figured out the scope of the claim and included the standard restrictions that you get from In re Owens. You can claim an area within a boundary, and that claims the area within the boundary, and that area has its shape and size and relative position and all those things, which the board did consider and included in its analysis. But as a matter of differences from the prior art or as a matter of venturing into issues that were not before the board? Well, this is the problem here. If we started, this is nothing, and here's our design, and we put lint in this continuum. Lint comes in here, and the board said it doesn't come close enough because it doesn't have a can at all, and you can't tell what size the can it would be. And the expert said, look, we don't know. It's virtually impossible to tell what size this can is going to be. So you don't know if it's a red bull can or a tuna fish can inside. When you say it's virtually impossible to decide what size the can is, that's not right because it has to function in the system. Right, yes. So maybe there can be some variation in can size, but it still has to work in the dispenser. You can't have a can that's twice as wide as the dispenser is. Absolutely. To fit in here, it has to fit between this bar going across here and this ledge underneath it. Right, so to the extent that your expert said you can't tell what the dimensions of the can would be. No, it's Campbell's expert who said that. Whoever's expert. That makes no sense. You can't tell. It has to be bounded to some extent by the structure of the device. Well, you can tell that it should be about as wide as a round. What I was struggling with is I don't understand why, since you've claimed a dispenser, you have not claimed a can. I mean, I know you're saying we've claimed a can, but I'm just completely baffled by how you claimed a can, a design to a can within a dispenser. I just don't understand that. I mean, maybe I'm just, we don't get that many design patent cases. Maybe I just don't understand design patent law. It's a very weird area. Can I just, you said, and maybe you misspoke, but what I wrote down that you, one of your answers to Judge Newman was talking about your patent. You're saying we claim the area within the boundary. That's, I am very confused about this claimed unclaimed for dotted lines, but I think the board said, or I think someone has said an unclaimed boundary forms no part of the claim design. Is that a correct statement that the unclaimed boundary forms no part of the claim design? And if so, how can you be claiming an area? Because you're talking about an area which is inside of that boundary. Let's say you have a picture on the wall of a frame around it. You say, I'm not claiming the frame. I'm not claiming the frame, I'm just claiming the picture. The same idea. Also, a boundary is really, it's almost a mathematical concept. I think it's the odd thing. All right. We're way beyond our time, but you have a final thought. I just want to alert the court to another decision on the SAS issue here, which came down, and that is that there is a case, Myelin Pharmaceuticals 914F1366, which held a waiver of the SAS defects in a decision. Yeah, but why do you think they waived it? They raised it in the blue brief. Well, in this case, they waived six months to raise it in oral argument. No, they raised it in the blue brief. They didn't waive six months. Well, the timeline is that this decision came down the end of March, I think, and then about April 24th was the SAS decision. They could have requested reconsideration by April 28th or maybe an after. Instead of doing that, they waived. Is that what the Myelin case says, that if you don't ask for reconsideration, you just appeal it here, you waive? It says that if you wait six months. In this case, it's four and a half months, but there were so many actions taken inconsistent with referring it back to the board and really just creating a dilatory situation. They filed a notice of appeal, and during the period of the notice of appeal, they could have made a motion to remand, which has been granted in many cases. They didn't make a motion to remand. They waited until October, which is a substantial time later. Was that when the blue brief was filed? That's when the appeal brief was filed, yeah. Okay, thank you. I'm sorry. Well, he went way over, so we'll give you a few more minutes only if you need it. Thank you, Your Honor. I'll nevertheless try to keep it brief. Judge Moore, if you wanted to see the 646 patent and Lynn's side-by-side, that's on page 35 of our blue brief. So you gave it to me after all. We did, Your Honor. The illustration there shows how Lynn's would look. Oh, yeah. I think the problem, though, is you didn't put it side-by-side with the PTOs. See, I am favorably disposed to you, not necessarily going to decide your way, but even when you put it side-by-side with what the PTO claimed, you only put it side-by-side with what you want us to accept as a changed claim construction. But for me, I'm struggling with – because, you know, I think the PTO's claim construction is just fine, so I don't have a problem with the spatial relations thing. So for me, I'm instead now looking at, but did they get it right when they refused to look at Lynn's, even with their claim construction? In that case, Your Honor, if you could look at page 43 of our brief, we actually have there an overlay of Lynn's over that same illustration we were looking at before with the claimed area shown in blue. Briefly, and again, I think this is a point, Judge Moore, that you were going over with counsel. Our experts certainly did not say it's almost impossible to tell what size can goes in there. We corrected that mischaracterization of the record at pages 14 to 16 of our reply brief. What is this whole thing? What am I missing? How in the design patent for a display device does your showing the can become the art that gets you over the prior art? Lynn's didn't show the can. You do. Well, Lynn's clearly uses a can. It has to use a can. It's absurd to think there's no can being used in that display. This isn't a patent, although I guess technically it's to what is in the picture, but the patent purports to be a display. How come that can makes all the difference? I'm just baffled. Maybe I don't understand design patent law. I'm just struggled with how the thing inside the product they're claiming is. We're with you on that, Your Honor. I think what is helpful here is to step back a bit because I think where the board went wrong in this primary reference analysis is it applied an overly rigid, unduly narrow, and restrictive notion of that test, which is not what the test is for. If you go back and you look at In re Rosen or In re Borden or the Jennings case, the point there, the reason that we have this primary reference test is that the court has found that what you can't do is find obviousness of a design patent based on selecting each design characteristic feature from a different piece of prior art and just assembling them to come up with an article that's similar to the design. That's In re Borden, and it runs up through MRC Innovations. Basically, this primary reference test, it's a common sense test. It's a tool against hindsight. What the court said in cases like Rosen and Jennings is, look, you have to start with something. You have to have a fair starting point, a reference that's a fair starting point from which you decide whether the interchange of design characteristics is fair. For me, I certainly don't think it's hindsight. Oh, we're going to put a can in Linz. Now I get it. Of course you're putting a can in Linz. There's no question there was always a can in Linz.  That's certainly our point on Linz, which is that a designer of ordinary skill would certainly understand Linz to show a dispenser. That's the whole point of the thing. Exactly, Your Honor. And Samways, similarly, I'll just touch on that, and then I'll sit down. Samways, again, is a reference when you read Samways as a whole, which we're required to do. Samways teaches dispensers. So if the can doesn't do it for me, I mean, what about just the size of the label being slightly different? I mean, they're both curved. They're both right there. Is there anything about the label? Your Honor, the proportionality things that we take issue with in the claim construction really don't matter for Linz for the reasons that you're saying. Linz even has that same proportionality. So for Samways, I think I would just close on saying, again, you need to apply the primary reference test as a common-sense test. It's a tool to help the court guard against time. Okay, I want you to, though, make a brief reply to the argument about SAS that your friend raised. Sure, about SAS. Your Honor, this court held in the Google case as recently as March that a motion to remand is not the only way to get relief under SAS. We timely raised it in our appeal brief here. We were not required to seek reconsideration at the board level before doing that. Thank you. Thank both sides. You're not going anywhere, I guess. No, Your Honor.